Entered on Docket
October 25, 2005

Hon. Bruce A. Markell
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

* * * * * *

| | |
|---|---|
| In re:<br><br>TORRIE DAMON WALKER, and<br>PORSHA ANNETTE REYNOLDS-WALKER<br><br>Debtors. | Case No.: BK-S-04-17960-BAM<br>Chapter 13<br><br>Hearing Date: September 8, 2005<br>Hearing Time: 2:30 p.m. |

**AMENDED OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION**

This case involves the efforts of Michael Lehners, Esq., appearing on behalf of Citimortgage, Inc. (Citimortgage), to obtain reconsideration of an order entered when he failed to appear at a hearing he scheduled. For the reasons stated in this memorandum, the court will deny Mr. Lehners' "Motion for Reconsideration" filed August 4, 2005 (Docket #34; the Reconsideration Motion).

**FACTS**

On June 28, 2005, Mr. Lehners filed a Motion of Relief from Stay (Docket #25; the Relief Motion) on behalf of Citimortgage with respect to the residence of Torrie Walker and Porsha Reynolds-Walker, the debtors in this case. The Relief Motion claimed that the debtors were delinquent on their home mortgage with Citimortgage, and on their chapter 13 plan. Mr. Lehners

served a notice of the hearing on the Relief Motion which stated that the hearing date would be July 27, 2005.[1]

Debtors, representing themselves, timely served an opposition to the Relief Motion. In it, the debtors acknowledged that they were late on their house payments, but they disputed Citimortgage's payment history. They also alleged, however, that a bill collector associated with Citimortage had recently harassed them, in violation of the automatic stay, by going to the debtors' home when only their minor child was present, and then threatening to throw the child's parents in jail and the child's family in the street. The debtors connected this alleged stay violation with Mr. Lehners because, after the harassment, Mr. Lehners or his office called the debtors using a previously undisclosed telephone number that had been pried out of their minor child by the bill collector.

Surprisingly, Mr. Lehners made no reply, written or otherwise, to these allegations before the July 27th hearing on the Relief Motion. Moreover, at that hearing, the debtors appeared, but Mr Lehners did not. On July 28, 2005, the court entered an order denying the Relief Motion with prejudice for failure to prosecute.[2]

On August 4, 2005, Mr. Lehners filed the Reconsideration Motion, which sought reconsideration on three grounds: that the debtors did not dispute the arrearage; that he had relied on debtors' alleged representations regarding payment of the arrearage; and that counsel's failure to appear was due to a "calendaring error" by his secretary. Counsel further denied "terrorizing" the

---

[1]On July 7, 2005, Mr. Lehners served an amended notice, again stating a hearing date of July 27, 2005.

[2]Dismissal of actions or denials of motions for failure to prosecute are presumptively with prejudice; that is, they act as a dismissal on the merits barring a subsequent request for relief under the same facts. *See* FED. R. CIV. P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication on the merits."). Rule 41(c) is relevant here because Rule 9014(c) of the Federal Rules of Bankruptcy Procedure makes Rule 7041 applicable to contested matters such as relief from stay motions, and Rule 7041, in turn, incorporates Rule 41 of the Federal Rules of Civil Procedure.

debtors. Mr. Lehners therefore requested relief from the order on the Relief Motion so that Citimortgage would not be penalized.

Mr. Lehners did not appear at the hearing on the Reconsideration Motion. Instead he sent "appearance counsel." The debtors appeared, however, and reiterated their prior position. They further contended that Mr. Lehners had made significant factual errors in the Reconsideration Motion. Appearance counsel could add nothing to the papers already filed, which was significant since the Reconsideration Motion only alleged Mr. Lehner's lack of knowledge of the identified bill collector, and not of the company for which he worked (and who had been named in the debtors' opposition).

The court denied the Reconsideration Motion from the bench. Although not the prevailing party, Mr. Lehners submitted a proposed order on the Reconsideration Motion for the court to sign. While this proposed order accurately reflected the court's ultimate disposition—denial of the Reconsideration Motion—it also contained a proposed finding that "this court did not find the Secured Creditor or its counsel harassed the debtors in any way." Not only did the court not make such a finding, it expressly stated on the record at the hearing on the Reconsideration Motion that Mr. Lehner's purported evidence for such a finding was non-responsive to the debtors' allegations.[3]

**DISCUSSION**

A. *The Illegitimate Nature of a "Motion to Reconsider"*

The Federal Rules of Civil Procedure "do not recognize a motion for reconsideration." Captain Blythers, Inc. v. Thompson (*In re* Captain Blythers, Inc.), 311 B.R. 530, 539 (B.A.P. 9th Cir. 2004). Instead, the rules recognize two types of motion to obtain post-judgment relief: a

[3]Mr. Lehners also did not serve a copy of the proposed order on the debtors as required by Local Bankruptcy Rule 9021. The court has issued a separate order to show cause under Rule 9011(c)(1)(B) and under Miller v. Cardinale (*In re* DeVille), 361 F.3d 539 (9th Cir. 2004) requiring Mr. Lehners to show why he should not be sanctioned for this conduct.

motion to alter or amend judgment, FED. R. CIV. P. 59(e), and a motion for relief from judgment, FED. R. CIV. P. 60.[4] These rules are made applicable to bankruptcy cases by Federal Rules of Bankruptcy Procedure 9023 and 9024, respectively.[5]

Citimortgage's Reconsideration Motion does not refer to either Rule 9023 or Rule 9024 (or to the rules they incorporate); indeed, it cites to no authority whatsoever. Instead, it simply assumes that relief contrary to the court's order is appropriate "without citing a particular Code section or Rule, or outlining the elements to be satisfied." *Captain Blythers*, 311 B.R. at 539. Not only does Citimortgage err when it fails to state the authority under which it seeks reconsideration, it compounds this error by offering nothing to support reconsideration other than a bare (and barren) plea for lenity due to a "calendaring error" on the part of counsel's secretary. Clearly, such a motion for reconsideration, devoid of any relevant authority, is a "motion asking for trouble." Smith v. Lachter (*In re* Smith), 242 B.R. 694, 698 n.3 (B.A.P. 9th Cir. 1999). In an attempt to give counsel the benefit of the doubt, however, the court will assess the Reconsideration Motion under all applicable standards.

B. *The Reconsideration Motion as a Motion to Alter or Amend the Judgment Under Bankruptcy Rule 9023*

If a motion for reconsideration is filed within ten days after the entry of judgment, the court may construe it as a motion for relief from judgment under Rule 9023, incorporating FED. R.

---

[4]In cases in which the court makes findings of fact or conclusions of law under Rule 7052, the Bankruptcy Rules also recognize a motion to amend or make additional findings. FED. R. BANKR. P. 7052, incorporating FED. R. CIV. P. 52(b). Rule 9014(c) makes Rule 7052 applicable to contested matters, and relief from stay motions such as the one at issue here are contested matters. FED. R. BANKR. P. 4001(a)(1). As there were no findings made with respect to the order on the Relief Motion, other than the uncontested fact that Citimortgage did not appear, analysis of Rule 7052 is not necessary in this case

[5]Rules 9023 and 9024 incorporate the entire text of Rules 59 and 60 of the Federal Rules of Civil Procedure with changes not relevant here. Accordingly, this opinion will refer to such rules interchangeably.

CIV. P. 59(e). Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001). After noting that "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly," *Wright, Miller & Kane* set forth four grounds upon which such a motion may be granted:

> First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. . . . Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2810.1 (1995). *See School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); 12 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE - CIVIL § 59.30[5][a][i] (3d ed. 2005).

In this case Mr. Lehners filed the Reconsideration Motion within ten days of the applicable court order, so it could be construed as a request under Rule 9023. But Citimortgage presents nothing to persuade the court to alter its judgment as requested.

1. <u>No Mention of Any Clear Error, Manifest Injustice or Change in Controlling Law</u>

The Reconsideration Motion makes no mention of any clear error of fact or law, any manifest injustice or any change in controlling law, or anything that could be construed as these grounds. Indeed, the Reconsideration Motion does not even mention the text of the original order denying the Relief Motion. It is as though Mr. Lehners believes that the Reconsideration Motion is another opportunity to make the same arguments as in the Relief Motion.

In this vein, Mr. Lehners continues to harp upon nonpayment by the debtors, as if failure to remedy this situation presents manifest injustice or clear error. Although the pleadings allege

that Citimortgage is undersecured by approximately $6,000 (approximately $136,000 in debt versus a value ascribed in the debtors' schedules of $130,000), there were no allegations that the value of the property was in decline; indeed, there may be every reason to believe that it might have increased in value. Regardless, the difference between the collateral's value and the amount of the debt is not of such magnitude that failure to grant relief from the stay was either clear error or manifest injustice, especially when the debtors disputed Citimortgage's payment history, and when the unrebutted evidence suggests the possibility of inequitable conduct by Citimortgage's agents.

Perhaps Mr. Lehners intends his repeated references to reliance on the debtors' statements before the hearing to raise an issue of manifest injustice.[6] The court doubts seriously whether there was any such reliance, and even if there was, whether it was reasonable. Citimortgage asserts that one of the debtors, Mr. Walker, contacted Mr. Lehners' office twice, on June 21 (before the Relief Motion was filed) and on July 1, 2005 (after the Relief Motion was filed), to work out a repayment plan. Mr. Lehners' secretary swears, in an affidavit attached to the Reconsideration Motion, that she spoke to Mr. Walker on these dates, and that on July 7 she faxed a proposed order containing a repayment schedule along with a cover letter to both debtors. In their filed opposition to the Reconsideration Motion, however, the debtors filed a declaration in which they deny ever having called Mr. Lehners' office or ever receiving a fax.

The record indicates that Mr. Lehners had no reason to rely on any statements allegedly made by the debtors. The Reconsideration Motion asserts that the debtors called Mr. Lehners to work out a repayment of the arrearages before any motion was filed, but never followed through on this offer. According to the Reconsideration Motion, it was this failure by debtors to follow through that prompted the filing of the Relief Motion. Despite this, Mr. Lehners argues for

---

[6]Mr. Lehners, referring to himself, states the following in the Reconsideration Motion: "Counsel was in reliance that the matter was worked out and had sent to appearance counsel a fax stating the terms we had worked out."

reconsideration based on his reliance on the debtors "following through on entering into a repayment plan."

This statement is very odd. Mr. Lehners, in the July 7 letter to the debtors,[7] specifically states that if he did "not hear from you or receive back your faxed signature back [sic] by July 20, 2005, *I will assume that you do not want to cure the arrears. . . .*" (emphasis added)

Not only did the debtors decline to sign and return the proposed order, they opposed it in writing. Mr. Lehners admits receiving their opposition. It is thus more than passing strange, then, that Mr. Lehners should now resurrect reliance on an "agreement" that his own correspondence indicated he assumed the debtors had rejected.

Mr. Lehners' claim of reliance is, at best, disingenuous, As such, there certainly is no "manifest injustice" in allowing the order on the Relief Motion to stand.

2. No Newly Discovered Evidence

Citimortgage's original Relief Motion was made under 11 U.S.C. § 362(d), and alleged two grounds of cause: the debtors' failure to comply with the terms of their confirmed chapter 13 plan; and a failure to make their last three monthly payments (from April 2005 through June 2005). The Reconsideration Motion restated these original claimed grounds of cause, and then described in significant detail some alleged contacts between Mr. Lehners' office and the debtors that were not mentioned in the Relief Motion. These contacts were alleged to have occurred both before and after Citimortgage filed the Relief Motion.

These additional conversations, plus the fact that the debtors had missed yet another monthly payment, were the sole "new" evidence presented.[8] "Evidence 'in the possession of the party before the judgment was rendered is not newly discovered . . . .'" Feature Realty, Inc. v. City

---

[7]This letter was part of the fax transmission that the debtors claim never to have received.

[8]Mr. Lehners did not submit any declaration or affidavit regarding his own knowledge or conduct, relying instead on his unsworn argument in his papers and his secretary's affidavit. As a consequence, the court has no admissible evidence from Mr. Lehners involving the alleged harassment.

of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003), *quoting* Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc., 833 F.2d 208, 212 (9th Cir. 1987).[9] Neither is evidence pertaining to after-occurring events unless such events would lead to a change in original result. Corex Corp. v. United States, 638 F.2d 119, 121 (9th Cir. 1981). In short, Citimortage does not purport to, nor does it, present any new evidence on which the court could grant relief.

C. *The Reconsideration Motion as a Motion for Relief From Judgment Under Bankruptcy Rule 9024*

A motion for reconsideration may also be construed as a motion for relief from a judgment under Bankruptcy Rule 9024, which incorporates Rule 60(b) of the Federal Rules of Civil Procedure. *United States v. Nutricology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992). Rule 60(b) permits a court to grant relief from a final order on a showing of mistake, surprise, or excusable

---

[9] As stated in *Feature Realty*, evidence is newly discovered within the meaning of Rule 60(b)(2) if:

> (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case."

331 F.3d at 1093, *quoting Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208, 211 (9th Cir. 1987). As summarized in *Moore's*, "the evidence must have become available only after judgment (with the exercise of due diligence), and be both admissible and probative." 12 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE § 59.30[5][a][iii] (3d ed. 2005).

The same standard for what constitutes "newly discovered evidence" applies in Rule 60(b)(2) and Rule 59(e), although there is some suggestion that because a Rule 60(b)(2) motion may be heard at a later time than a Rule 59(e) motion, the quantum or proof should be stronger the longer the gap between the judgment and the motion under Rule 60(b)(2). 11 CHARLES ALAN WRIGHT & ARTHUR M. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2859 (1995) ("The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2) . . . ."); 13 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE § 60.42[1][a]-[b] (3d ed. 2005); *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990); *Coastal Transfer Co.*, 833 F.2d at 211-12.

neglect, Rule 60(b)(1); newly discovered evidence, Rule 60(b)(2); fraud, Rule 60(b)(3); a void judgment, Rule 60(b)(4); a satisfied or discharged judgment, Rule 60(b)(5); or other circumstances justifying relief, Rule 60(b)(6).[10]

With respect to the Reconsideration Motion, the court finds no support for relief from judgment under any provision of Rule 60(b).

1. Relief Under Rule 60(b)(1)

Rule 60(b)(1), which provides for relief from acts constituting mistake or surprise, is "best understood from analyzing the fact patterns" of cases applying it. 12 JAMES WM. MOORE, ET. AL., MOORE'S FED. PRACTICE 3d ¶ 60.41[1][a] (2005). Under theses patterns, mistake or surprise may be found in circumstance where there is some reason for confusion or misunderstanding by the parties. *Id.*

There was no mistake or confusion involved here. The court (and the debtors) knew exactly what was being argued at the Relief Motion, and the reasons behind the original order were set forth in open court at the conclusion of the hearing on the Relief Motion. Surprise cannot be an issue since the grounds for denial did not extend beyond the pleadings or the allegations of the debtors.

That leaves one last possible ground under Rule 60(b)(1): that of "excusable neglect." The Supreme Court has "established a four-part balancing test" to determine "excusable neglect." Pincay v. Andrews, 389 F.3d 853, 855 (9th Cir. 2004) (en banc), *cert. denied*, 125 S.Ct. 1729 (2005), *citing* Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993). *Pioneer* established an equitable approach which considers "all relevant circumstances," including "(1) the danger of prejudice to the non-moving party, (2) the . . . potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of

[10]The Reconsideration Motion presents no issue of fraud, Rule 60(b)(3), a void judgment, Rule 60(b)(4), or a satisfied or discharged judgment, Rule 60(b)(5). Accordingly, this opinion will not address those grounds for relief.

the movant, and (4) whether the moving party's conduct was in good faith." *Pioneer,* 507 U.S. at 395.

*Pincay* arose in the context of counsel neglect. There, counsel failed to timely file a notice of appeal due to a "calendaring error" by his paralegal, who had misread the applicable rule regarding the deadline within which to file a notice of appeal. *Pincay*, 389 F.3d at 855. Upon learning of the mistake the attorney promptly sought an extension and tendered a notice of appeal. *Id.* The district court, applying the *Pioneer* factors, found the error was excusable neglect. *Id.*

On appeal, in an en banc decision, the Ninth Circuit held that delegation of calendaring functions to a paralegal was neglect, but not *per se* inexcusable neglect. *Id.* Finding that the remaining *Pioneer* factors weighed in favor of relief, the court found the district court had appropriately exercised its discretion and upheld its granting of relief. *Id.* at 859.

Here, as in *Pincay,* "three of the factors militate in favor of excusability." *Id.* As to the first factor, the debtors would not be significantly prejudiced by a ruling of excusable neglect. Their case would proceed on the merits, hardly a ground of prejudice, especially when the debtors had no reasonable expectation of not paying their mortgage. As stated in TCI Group Life Ins. Plan, Life Ins. Co. of N. Am. v. Knoebber, 244 F.3d 691, 701 (9th Cir. 2001), in the context of relief from a default judgment:

> To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, "the standard is whether [plaintiff's] ability to pursue his claim will be hindered." . . . It should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment. For had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so.

Having to incur the risk and cost of a contested hearing does not constitute prejudice. To be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased

difficulties of discovery, or greater opportunity for fraud or collusion." Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433-34 (6th Cir. 1996), *quoted with approval in Knoebber*, 244 F.3d at 701. There is no showing of any such factors here, and thus excusing the non-appearance would have "simply restore[d] the parties to an even footing." *Knoebber*, 244 F.3d at 701.

With respect to the second *Pioneer* factor, impact on the judicial proceedings, the granting of the relief would have caused, at most, minor perturbations of the judicial process. The debtors are in an extended chapter 13 payment plan. In the context of that payment plan, ongoing dealings with creditors are expected and normal. Any reliance by the debtors on the court's order on the Relief Motion is also minimized by Citimortgage's prompt action seeking reconsideration.

The third *Pioneer* factor, a lack of good faith, also does not raise an issue. Although counsel's submission of an inaccurate order may raise issues of good faith, there is no evidence that the initial failure to appear or the arguments set forth in the Reconsideration Motion were feigned or otherwise involved bad faith "tactical or strategic motives." *Pincay*, 389 F.3d at 861 (Berzon, J., concurring).

Thus, as in *Pincay*, the court's decision hinges on the fourth *Pioneer* factor: the reason for the negligence.[11] To prevail on grounds of excusable neglect, the movant must provide reasonably sufficient facts to show that the reason for the failure to appear was excusable. *Pioneer*, 507 U.S. at 395. Mr. Lehners has not met this burden. In *Pincay*, the attorney produced evidence that he had relied on a well functioning, established calendaring system operated by experienced paralegals. *Pincay*, 389 F.3d at 859. By contrast, the Reconsideration Motion presents no evidence of any system used to prevent such mistakes, or the experience level of Mr. Lehners' secretary. *See* 13 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE § 60.41[1][c][ii] (3d ed. 2005) ("Mistakes resulting from institutionalized procedures, or lack of 'quality control' type of

---

[11]In *Pincay* the court recognized the need for and benefit of attorneys' delegating routine tasks to others. *Pincay*, 389 F.3d at 856. At the same time the court did not relieve attorneys of responsibility for any error, regardless of whose error it was. *Id.*

procedures, are not excusable.") .

Further, as noted by the initial panel in *Pincay*, "[t]he focus must be on the lawyer." Pincay v. Andrews, 351 F.3d 947, 951 (9th Cir. 2003), *rev'd on other grounds*, 389 F.3d 853 (9th Cir. 2004) (en banc). Mr. Lehners has offered explanations on behalf of appearance counsel and his secretary. He explains that he arranged for "appearance counsel" to appear in his stead for the Relief Motion, but that appearance counsel did not appear because his secretary provided an incorrect hearing date. Mr. Lehners has not, however, offered any excuse for his own neglect, such as any reason for his negligence in failing to discover and thus prevent the error.[12] All that Mr. Lehners has done is show that he abdicated his responsibilities to "appearance counsel" and then to his secretary. This does not constitute a sufficient showing to merit a finding of excusable neglect on his behalf in light of the debtors' timely filed opposition.[13]

2. Relief Under Rule 60(b)(2) — "Newly Discovered Evidence"

As set forth above, Mr. Lehners introduced new evidence with the Reconsideration Motion, but none of it qualifies as "newly discovered" evidence within the meaning of Rule 60(b)(2). *See* text accompanying note 8 *infra*. Everything provided by Mr. Lehners (except the alleged subsequent failure to pay during September 2005) was known at the time of the hearing on the Relief Motion, or could have been known with only the slightest diligence. As a consequence, none of Mr. Lehner's submissions constitutes "newly discovered" evidence, and thus Rule 60(b)(2) is not a proper basis for relief. *Feature Realty*, 331 F.3d at 1093; 12 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE § 60.42[3] (3d ed. 2005).

---

[12]To be fair, Mr. Lehners does not condone his own conduct. As he states in his pleadings, "there is no excuse for not appearing at [a] hearing." (Creditor's Motion For Reconsideration. at 2.)

[13]Mr. Lehners offers no explanation for his failure to respond to the debtors' original opposition.

3. Other Possible Grounds

When taken together, Rule 59 and Rule 60 encompass all possible post-judgment relief: Rule 59 incorporates common law principles of equity for granting new trials, 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2801 (1995), and Rule 60 preserves the relief afforded by ancient remedies for relief from settlemed judgments while abolishing the separate and independent use of those remedies. *Id.* at § 2851. The preemptive effect of these two rules is seen in Rule 60(b)(6), which allows a court to set aside a judgment for "any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b)(6).[14]

As a consequence, Rules 9023 and 9024, incorporating as they do Rules 59 and 60, incorporate and recognize the need "'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.'" Kieffer v. Riske (*In re* Kieffer-Mickes, Inc.), 226 B.R. 204, 209 (B.A.P. 8th Cir. 1998), *quoting* Hoover v. Valley West D M, 823 F.2d 227, 230 (8th Cir. 1987), *in turn quoting* Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 515 (8th Cir. 1984). Due to this broad scope of potential relief, under both rules "a bankruptcy court has wide latitude to reconsider and vacate its own prior decisions . . . ." Bialac v. Harsh Inv. Corp. (*In re* Bialac), 694 F.2d 625, 627 (9th Cir. 1982).

The final examination of the Reconsideration Motion is thus undertaken pursuant to the standards embodied in Rule 60(b)(6). Relief under that rule, however, is reserved for "extraordinary circumstances." Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981). *See also* Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors, 786 F.2d 1400, 1410 (9th Cir.

---

[14]To underscore this exclusivity, Rule 60(b) requires that "any relief from a judgment *shall* be by motion as prescribed in these rules," *id.* (emphasis added), even though the text of the rule also indicates that it "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, . . . ."

1986). As *Moore's* succinctly phrases it, "fault by movant usually means [a] lack of 'extraordinary circumstances.'" 12 JAMES WM. MOORE, ET. AL., MOORE'S FEDERAL PRACTICE § 60.48[3][c] (3d ed. 2005). Simple calendaring errors, without the benefit of any explanation of systems and procedures to catch and correct them, do not present extraordinary circumstances. Rule 60(b)(6) thus offers no grounds for relief.

**CONCLUSION**

In appropriate circumstances a calendaring error may be sufficient to grant the relief requested under either Rule 59 or Rule 60. Nothing in this case, however, shows that Mr. Lehner's actions qualify for relief under either Rule 59(e) or Rule 60(b)(1)-(5), or present the type of unusual or extraordinary circumstances that justifies relief under Rule 60(b)(6).

Justice is served when parties are provided with notice of and a meaningful opportunity to be heard as required by due process. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-315 (1950). Due process, in turn, is satisfied if a party has knowledge of the consequences of his or her own conduct. Link v. Wabash R.R. Co., 370 U.S. 626, 632 (1962).

Citimortgage's counsel knows, or should know, the consequences of a failure to appear at a scheduled hearing, set on that counsel's own motion, and as to which a proper objection was filed. Clearly, counsel also knew the date of the hearing, having served notice of it twice correctly. Mr. Lehners' failure to appear initially, coupled with his failure to properly support the Reconsideration Motion, are inexcusable under relevant law.[15]

It suffices for determination of the Reconsideration Motion that Mr. Lehners has not provided to the court anything relevant under the rules related to relief from a judgment. Instead, Mr. Lehners has placed the court in a position of having to guess what he is pleading without

---

[15]They also contain elements of unacceptable conduct, but that issue is for another day. As noted above, a separate motion for sanctions is pending against Mr. Lehners for his conduct in this case.

benefit of any cited authority, any elements of that authority, or any explanation of how the facts might relate to those elements. The Reconsideration Motion is hereby denied.

Copies sent to:

Torrie Damon Walker
2112 Fred Brown Drive
Las Vegas, NV 89106

Porsha Annette Reynolds-Walker
2112 Fred Brown Drive
Las Vegas, NV 89106

Rick A. Yarnall
302 E. Carson Ave. #350
Las Vegas, NV 89101

Michael Lehners, Esq.
429 Marsh Avenue
Reno, NV 89509

# # #